## MARGARET KINNEY

### V.

## HATTIE DODD, AND SWITCHMEN'S MUTUAL AID ASSOCIATION OF NORTH AMERICA.

*Life Insurance—Mutual Benefit Association.*

Upon a bill filed by the mother of a deceased member of a mutual benefit association to prevent the same from paying over to the affianced of deceased, the amount called for by its certificate, this court holds, it clearly appearing that the deceased intended that the latter should have the same in case of his death, and further that the policy was, according to the rules of the association, properly made payable to her, that the decree in her favor must be affirmed.

[Opinion filed June 25, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

In this case it appeared that one Fred McDougald, in his lifetime, was a switchman, and a member and policy holder (No. 2,271) in the Switchmen's Mutual Aid Association of North America, under which policy, upon his death, there was payable $800; that on February 7, 1889, the insured was killed at Cook county; that the appellant is the mother of the assured and his only heir at law, he being single and unmarried at the time of his decease.

The certificate of membership under which the benefit involved in this action is payable is as follows:

"No. 2,271.

"GRAND LODGE OF THE SWITCHMEN'S MUTUAL AID ASSOCIATION
OF NORTH AMERICA.

"CHICAGO, February 20, 1888.

"This Policy of Insurance Witnesseth:

"That the Switchmen's Mutual Aid Association of North America, in consideration of the grand dues and assessments to them duly paid, in accordance with the provisions of the constitution of said association, by Fred McDougald, and of the annual payment of such grand dues and assessments every year during the continuance of this policy, do assure the life of said member, Fred McDougald; and the said association do hereby promise and agree to pay the amount of insurance that may, at the time of the death of said assured, be justly due and owing, according to the provisions of said constitution, as well as the like sum in case of disability of said assured, in accordance with the terms and conditions further provided in said constitution, the said sum or sums to be paid as stipulated thereon, to and for the sole use of such person or persons to whom this policy shall be made assignable by said assured; and if such person or persons shall, at the death of such assured, be not living, then to the nearest heir or heirs on receiving proof of the death of said assured, and the identity and proof of right of claimant to inherit the same according to the requirements of said constitution, any indebtedness to the association on account of this policy being first deducted therefrom.   In every case when this policy shall cease and terminate, or be null and void by reason of immoral or other misconduct, and the assured shall forfeit his membership in this lodge, according to the provisions of the constitution of this association, then all payments thereon shall be forfeited to the association and this policy canceled.

"GRAND LODGE SWITCHMEN'S MUTUAL AID ASSOCIATION OF NORTH AMERICA, organized at Chicago, Ill., March 2, 1886.

"In witness whereof the same Switchmen's Mutual Aid Association of North America has, by its Grand Master and

Grand Secretary and Treasurer, signed, sealed and delivered this contract, this 20th day of February, 1888.

"WM. A. SIMSROTT,

" Grand Sec. and Treas.

" [Attest:]    JAMES L. MONAGHAN,

" Grand Master."

The stub from which the certificate was taken, is as follows:

" No. of certificate, 2,271.

"To whom issued,

  " Fred McDougald.

" Residence,

  " Auburn Junct., Ill.

" Date of certificate, Feb. 20, 1888.

" This certificate issued................, 18  。

" In place of certificate No.........canceled........18  。

" Devisee, Hattie Dodd, related.............

  " Batavia, Ill."

The written portions of said stub, being the name of the assured, his residence, date, name, Hattie Dodd, and her residence, were all made by and in the handwriting of Simsrott, the secretary, and claimed by him to have been filled out at the time of the delivery of the policy to McDougald.

Appellant claimed as the mother of the deceased switchman McDougald, under the terms of the certificate, as his nearest heir.

The pleadings are appropriate and in form to entitle either to recover, whichever of the twain the facts and law of the case shall warrant the court in awarding.

The appellant filed her bill to prevent the Switchmen's Association from paying the amount due under the certificate to Hattie Dodd, and to procure a decree affirming her right thereto, and Hattie Dodd filed her cross-bill denying the right of appellant to the fund and claiming that the same in right and equity should be paid to her. The association paid the money into court to abide by its decree.

The secretary of the association testified that, as in the performance of his duty he was required to do, when he was writing out the certificate he asked McDougald whom he

wished the policy to be payable to, and he said "Miss Hattie Dodd;" that he was going to marry her. That the writing of her name in the stub was in accordance with the rules of the order.

Two letters written by McDougald to Hattie Dodd, were introduced. In one of these he wrote: "Do not think if I should get badly hurt or sick that you could not find me." * * * "My insurance is to you in case I should get killed, so that you would be notified in case anything serious should happen." In the other he said: "Yes, Hattie, I sent you my insurance policy. It is in your favor, therefore you keep it, and should anything happen to me you have that to show."

Hattie Dodd produced the certificate and made proof of death.

The Switchmen's Association is not a corporation.

The court below directed the payment of the money to Hattie Dodd.

Mr. JESSE HOLDOM, for appellant.

Had Hattie Dodd, as the *fiance* of McDougald, an insurable interest in his life?

Under the allegation of the answer and cross-bill, the proof of the by-laws and constitution were an essential and vital part of the case of Hattie Dodd. For want of such proof the claim of Hattie Dodd is not substantiated in law.

This court decided that "a mere delivery of possession of a certificate confers no rights upon the holder." Highland v. Highland, 13 Ill. App. 510, and affirmed in 109 Ill. 366.

In Highland v. Highland, 13 Ill. App. 516, it was held, that "the right to the money does not pass by the delivery of the certificate. Though the certificate should have upon its face a declaration to whom the money should be paid, and the certificate and declaration be delivered to the person to whom made payable, the money or right to the money does not pass and vest in the person designated. Parol evidence can not be resorted to to modify or explain the terms of the policy or enlarge its meaning." Chapter 58, Sec. 4, R. S., of this State provides: "All instruments for the payment of money or personal property, etc., must be assigned in writing."

In the case of Turner v. P. & S. R. R. Co., 95 Ill. 134, it was decided that "All instruments for the payment of money or articles of personal property to a particular person, are only assignable under our statute so as to enable the assignee to maintain an action in his own name by an instrument of the person named as the payee under his hand," etc.

In U. S. Life Ins. Co. v. Ludwig, 103 Ill. 305, it was held: "Policies of insurance are but choses in action and governed by the same principles applicable to choses in action in general." Alexander v. N. W. Aid Ass'n, 126 Ill. 558.

"An assignable contract can be assigned only by writing on some part of the same paper which contains the contract." Estes v. Hairston, 1 Dev. (N. C.) 354.

Messrs. Hopkins, Aldrich & Thatcher and Hamline, Scott & Lord, for Hattie Dodd, appellee.

Counsel first asks: "Had Hattie Dodd, as the *fiance* of McDougald, an insurable interest in his life?" to which counsel says the decisions uniformly answer, "No." But the decisions which are cited do not support counsel's assertion.

The case relied upon by appellant is Palmer v. Welch, 23 N. E. Reporter, or which is in the advance sheets, Vol. 132, No. 2, p. 141. It is true that in that case the certificate was payable to the deceased's *fiance*, and the court held she could not recover. The right to recover, however, was not denied because she was the *fiance* and had no insurable interest, but for an entirely different reason. In that case the certificate was issued by the Royal Arcanum, a mutual benefit association incorporated under the laws of Massachusetts.

Both the statutes of Massachusetts, and the laws, rules and regulations of the Royal Arcanum itself, as well as the certificate issued, under which the *fiance* was claiming, expressly limited the beneficiaries to certain relatives, and those dependent upon the member for maintenance, for food, clothing, lodging or education. Inasmuch as it was admitted by stipulation in that case that affianced was not dependent upon the deceased in manner as above required to bring her within the limited list of beneficiaries above provided for, the Supreme

Court held that she was not entitled to the benefits of the certificate in that order.

That decision, the court readily sees, is no authority for counsel's position, and does not decide at all that a *fiance* has no insurable interest. It merely decides that a *fiance* who is not dependent does not come within the limited list of beneficiaries provided for by the rules and by-laws of the Royal Arcanum, and the particular statute of the State under which that order was incorporated. But a *fiance*, one can readily see, may have an insurable interest in the life of another and still not be actually dependent on that other for the list of necessaries enumerated in the rules and by-laws of the Royal Arcanum. Under a certificate unrestricted as to the beneficiaries, or issued by an association either unincorporated or incorporated under a law which does not so limit the beneficiaries, a *fiance* may have an insurable interest in the life of another and recover accordingly.

The other two cases cited by appellant of Ballou v. Gile, 50 Wisconsin, 614, and the American Legion of Honor v. Perry, 140 Mass. 580, are only to the same effect as Palmer v. Welch, *supra*.   ·

So much for the decisions cited by counsel in support of his position. On the contrary, as to whether Hattie Dodd, as the *fiance* of McDougald, had an insurable interest in his life, we maintain, *first*, that our courts do uphold the claims of a *fiance* where no statute or law of the association contravenes; *secondly*, that under the decisions of our courts it makes no difference whether Hattie Dodd had an insurable interest or not; and *thirdly*, that appellant can not be heard to object in this case on that ground.   ·

In proof of our first reply, that our courts do uphold the claims of a *fiance* where no statute or law of the association forbids, we cite counsel to the case of Johnson v. Van Epps, found in 14 Ill. App. 201, and 110 Ill. 551. In that case Johnson took out a policy payable to Mrs. Van Epps or his heirs. Mrs. Van Epps was his *fiance*, and was so represented by him to the association at the time he took out his certificate, and she bore no other relation to him up to the time of his

death, and also was not dependent upon him. After his death Mrs. Van Epps filed her bill in chancery and claimed the benefits. The heirs of Johnson contested her claims on the ground that she was only his *fiance* and as such she had no insurable interest in his life, and could not recover—as in the case before your honors. But the Circuit, Appellate and Supreme Courts all held that she could recover, and awarded her the full amount of the certificate.

In proof of our second reply, namely, that Hattie Dodd need not have an insurable interest in the life of said Mc-Dougald in order to recover under the policy in question, we cite the case of Bloomington Mutual Benefit Association v. Blue, 120 Ill. 121, where this question is conclusively settled in our State. In that case it was contended that inasmuch as Blue had no insurable interest in the life of Bailey, the contract was void; but the court, after exhaustively considering the decisions of other courts and of the United States Court on the question of insurable interest, lays down the doctrine as follows:

"It may be regarded as a plain proposition of law that a wagering policy is void, and we think it is also well settled that a policy taken out on the life of a third party by a beneficiary, in the continuance of whose life the beneficiary has no pecuniary interest, may be regarded as a wagering policy, and as such would be void. Had this policy been taken out by Blue on the life of Bailey without his knowledge or consent, and had the premiums been paid by him, it would manifestly fall within what is known as a wagering policy, and would be void. Public policy forbids one person, who has no interest in the continuance of the life of another, from speculating on that life by procuring a policy of insurance; but here it does not appear that Blue had any instrumentality whatever in procuring the policy on the life of Bailey, or that he ever paid any portion of the premiums to procure the policy or to keep it in force; and hence the case of Insurance Co. v. Hogan, 80 Ill. 39, cited by the defendant, has no bearing upon the case. In the case cited, the insurance was procured by the beneficiary, and all the premiums were paid by him, while here, Bailey

procured the policy and paid all the premiums. Manifestly, the Hogan case has no bearing upon the facts in this case. Bailey had an insurable interest in his own life, and had a clear right to procure a policy on his life, and unless some principle of public policy is violated, he could make it payable in case of death, to any person whom he might desire."

WATERMAN, J. It clearly appears that the assured intended to make, and believed he had made, his policy payable to Hattie Dodd. The association so understood and agreed to make payment.

This being the case, even if there had been a want of a technical compliance with everything requisite to constitute her the beneficiary, a court of equity, which looks to substance rather than form, would carry out the plain and manifest intention of the parties. But so far as appears, the policy was entirely in accordance with the rules and regulations of the association, made payable to Hattie Dodd. She was the beneficiary named at the time the policy was issued and her name was inserted in the only way and place provided for designating beneficiaries.

While a lawyer might not speak of her as a person "to whom the policy was made assignable," it is evident that what the assured and the association thought necessary to make the certificate payable to her, was done.

There was an undoubted right to make the certificate payable to Hattie Dodd; the parties did what they thought secured this; there is no rule of public policy which forbids the carrying out of such intention. The decree of the court below awarding the money paid in on this certificate to her is therefore affirmed.

*Decree affirmed.*